74 F.3d 178
 37 U.S.P.Q.2d 1466, 96 Cal. Daily Op. Serv. 324,
96 Daily Journal D.A.R. 510
 WILLIAM KEETON ENTERPRISES, INC., a Washington corporation,
d/b/a Strip-O-Gram, Strip-A-Gram and Stripper
Gram, Plaintiff-Appellee,
v.
A ALL AMERICAN STRIP-O-RAMA, INC., a Washington corporation,
d/b/a Strip-O-Rama; David Gales, Defendants-Appellants.
 No. 94-35712.
 United States Court of Appeals,
Ninth Circuit.
 Argued, Submission Deferred: Oct. 16, 1995.
Resubmitted: Dec. 27, 1995.
Decided Jan. 16, 1996.
 
 Appeal from the United States District Court for the Western District of Washington.
 Martin Gales, Montgomery, Carroll & Gales, Spokane, Washington, for defendants-appellants.
 Paul D. Doumit, Doumit & Doumit, Olympia, Washington, for plaintiff-appellee.
 Before: REINHARDT and TROTT, Circuit Judges, and SCHWARZER, District Judge.*
 OPINION
 PER CURIAM:
 
 
 1
 This is an appeal from an order entered July 21, 1994, enjoining defendants from using or doing business as "A All American Strip-O-Rama" and/or "Strip-O-Rama/A All American"; ordering them to disconnect and terminate use of all telephone numbers listed under those names and imposing sanctions of $500 per day for violation of the order; and imposing attorneys' fees on defendants as sanctions for their breach of "the ... settlement agreement and Stipulated Judgment and Permanent Injunction."
 
 
 2
 The district court had subject matter jurisdiction under 15 U.S.C. Sec. 1121 and 28 U.S.C. Sec. 1338(a). We have jurisdiction under 28 U.S.C. Sec. 1292 of this appeal from an order granting an injunction.
 
 
 3
 We vacate and remand because the district court lacked jurisdiction under Kokkonen v. Guardian Life Ins. Co., --- U.S. ----, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), to enforce the settlement agreement that ostensibly provided the basis for its order. Further, even if the district court's order had satisfied Kokkonen, the record indicates that the parties never reached an enforceable settlement agreement. Finally, even assuming that the parties had reached agreement on the terms of a settlement agreement and jurisdiction existed to enforce it, the district court's order would have to be vacated for failing to comply with the requirements of Fed.R.Civ.P. 65(d).
 
 FACTS
 
 4
 For a number of years, plaintiff William Keeton Enterprises, Inc. and defendants A All American Strip-O-Rama, Inc. have been involved in a dispute, accompanied by public confusion, over their simultaneous use of different variations of the trade names "Strip-O-Rama" and "Strip-O-Gram" in connection with their strip-tease telegram businesses. On August 3, 1992, plaintiff filed this action against defendants for violating federal service mark rights. On June 29, 1993, on the eve of trial, the parties reached a settlement. Counsel for both sides appeared before the court to recite the terms of the settlement on the record. Counsel for defendants said in relevant part:
 
 
 5
 The terms of the agreement are that the defendants agreed to change their name. The new name that the defendants will use is A All American Stripper, one word, S-T-R-I-P-P-E-R, Rama, next word, capital R-A-M-A, that's capital R and small A-M-A.
 
 
 6
 ... [I]n any telephone listing or printed material there shall be blank spaces directly between all of the words as opposed to any hyphens or other mark differentiating.
 
 
 7
 That doesn't mean we can't go beyond the scope of the word for advertising purposes.
 
 
 8
 The court is to enter a permanent injunction.
 
 
 9
 Following the hearing, counsel for the parties prepared the Stipulated Judgment and Permanent Injunction ("SJPI") and delivered it to the court for signature. The SJPI had three provisions. First, it provided that "both parties shall be permanently enjoined from making disparaging references about each other, expressly or by implication." Second, it provided for court approval and order of certain "Stipulated Terms," as follows:
 
 
 10
 1. That both parties shall use selling methods that state what services they offer and what services they do not offer.
 
 
 11
 2. That defendant shall use good faith efforts to change telephone listings, printed materials and advertisements as soon as reasonably possible.
 
 
 12
 3. That the parties shall bear their own respective costs and attorney's fees.
 
 
 13
 Third, it provided for a dismissal with prejudice of all claims and counterclaims.
 
 
 14
 The SJPI was signed and filed by the court on June 29. Later that same day, however, counsel for both parties became aware that certain aspects of their agreement had been omitted from the SJPI submitted to the court and attempted to withdraw it. They contacted the court but by then it had already been signed. On July 2, defendants requested a hearing on the "presentment of judgment," "withdraw[ing] any consent to entry of further Stipulated Judgments herein." Counsel pointed out that defendants reserved the question of the continuing validity of their service marks and also stated that "[t]he settlement reached by the parties does not provide for any continuing action or jurisdiction by the ... Court except for a permanent injunction enjoining the corporate parties from making 'disparaging references about each other.' " (Emphasis in original.)
 
 
 15
 On July 21, the court entered a minute order striking the stipulated judgment "erroneously entered" on June 30. It directed the parties to submit a "revised Stipulated Judgment" within ten days. On July 26, plaintiff submitted to the clerk a proposed injunction, which expanded on the stipulated terms but still restricted the injunction to prohibiting the parties from making disparaging references. Defendants never signed it, however, and the court did not enter it.
 
 
 16
 On August 30, the court entered a minute order setting a hearing for September 14 to discuss defendants' request to vacate the settlement agreement that had been read into the record on June 29 and to reschedule the trial.
 
 
 17
 At the September 14 hearing, defendants pointed out "that the parties cannot agree to the interpretation of the agreement that we put together." Defendants maintained that the agreement does not address the validity of its service mark "Strip-O-Rama." The court dismissed this interpretation as "ridiculous," and stated that it would not be necessary to submit a new order "because the terms of the agreement are set forth in the record. They are binding and enforceable, and I think that is perfectly adequate." He added that he would "rescind the minute order that vacated the settlement agreement and order and reinstate the order ... [of] June 29." The court raised the subject of sanctions against the defendants, and defendants' counsel responded:
 
 
 18
 I don't see how sanctions are appropriate in this case. What we have is an honest mistake by the parties. In fact, the Court right now is granting relief that sounds to us like what we wanted in the first place with this initial order of June 29.
 
 
 19
 The minute entered in the court's docket after the hearing stated:
 
 
 20
 The Court will rescind the Minute Order ... vacating the stipulated settlement. The order signed 6/29/93 is reinstated. The Court declines to impose sanctions ... at this time.
 
 
 21
 On May 13, 1994, plaintiff moved for an order "enforcing the terms of the settlement agreement entered into the record on June 29, 1993." Defendants' response maintained that they had changed their name and were using "Strip-O-Rama" in conjunction with "A All American" such that all confusion had been eliminated.
 
 
 22
 On June 29, the court entered a minute order stating that the recent decision of the Supreme Court in Kokkonen v. Guardian Life Ins. Co., --- U.S. ----, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), did not bar enforcement, because
 
 
 23
 the district court embodie[d] the settlement agreement in its [June 29, 1993] dismissal order.... No language in Kokkonen suggests that dismissal pursuant to a settlement agreement precludes a court from reopening a case to enforce its own orders. Indeed, Kokkonen specifically acknowledges that ancillary jurisdiction to enforce a settlement agreement lies in the district court to "vindicate its authority and effectuate its decrees."
 
 
 24
 Plaintiff's motion for sanctions and to enforce the settlement was set for hearing on July 21.
 
 
 25
 The issue presented at the July 21 hearing was whether the use of the words "Strip-O-Rama" violated the SJPI of June 29, 1993. Defendants maintained that it did not as long as it was being used together with "A All American." The court disagreed, stating in part:
 
 
 26
 The only reason that language [requiring discontinued use of those words] wasn't included was the court's very strong feeling that the order was quite clear already and the language wasn't necessary.
 
 
 27
 The court further indicated some confusion about whether the July 26, 1993 proposed order submitted by plaintiff, which would have corrected the June 29, 1993 order, had actually been entered. Defendants' counsel pointed out that the July 26 proposed order had never been entered and that the June 29 order therefore controlled. The court then announced that it would enter findings and conclusions later that day.
 
 
 28
 Later on July 21, the court did enter its findings and conclusions, stating that the parties had stipulated to the judgment and injunction entered on June 30, 1993 (i.e., the SJPI), "which provided that defendants 'shall use good faith efforts to change the telephone listings, printed materials and advertisements as soon as reasonably possible' " adding, "to reflect the terms of the settlement agreement read into the record by defendants' counsel on June 29, 1993." (Emphasis added.) The emphasized language, however, does not appear in the SJPI or in any other prior order. The terms of the settlement agreement read into the record on June 29, 1993, were never reduced to an order; the proposed order submitted by plaintiff on July 26, 1993, was never signed either by the defendants or by the court.
 
 
 29
 The July 21 order went on to state that "all parties were obligated to comply with the [SJPI] entered on June 30, 1993" and that the "settlement agreement and [SJPI] required defendants to change their operating name to 'A All American Stripper Rama' and to cease using hyphens in their advertising name." It added that by continuing to use "Strip-O-Rama," the defendants "are in breach of the terms of the ... settlement agreement and [SJPI] and have violated the Court's order to make good faith efforts to change telephone listings, printed materials and advertisements as soon as reasonably possible." The court then assessed attorneys' fees incurred as a result of defendants' breach, ordered the violating phone lines to be disconnected, and enjoined defendants from using "Strip-O-Rama" or "any substantially similar name." Defendants' motions for stay were denied.
 
 DISCUSSION
 
 30
 In Kokkonen, the Court held that the district court lacked jurisdiction to enforce a settlement agreement that had been read into the record and pursuant to which the court had entered a stipulated order dismissing the action with prejudice. Because the order did not reserve jurisdiction to do so, the district court was precluded from enforcing the settlement agreement. "Enforcement of the settlement agreement ... is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." --- U.S. at ---- - ----, 114 S.Ct. at 1675-76.
 
 
 31
 The Court acknowledged that courts have ancillary jurisdiction to vindicate their authority and effectuate their decrees. Such jurisdiction may exist
 
 
 32
 if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal--either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.
 
 
 33
 Id. at ----, 114 S.Ct. at 1677. See generally, Hagestad v. Tragesser, 49 F.3d 1430, 1433 (9th Cir.1995) (no jurisdiction to enforce settlement agreement where dismissal order neither expressly reserved jurisdiction nor incorporated the terms of the settlement agreement); see also In re Hunter, 66 F.3d 1002, 1006 (9th Cir.1995) (no ancillary jurisdiction to enforce settlement agreement).
 
 
 34
 The instant case falls short of meeting these requisites for three reasons. First, the reservation of jurisdiction in the SJPI, by way of the provision for a "Permanent Injunction," was limited to enjoining the parties from "making disparaging references about each other"; it did not reserve jurisdiction to enjoin defendants from using or doing business under any particular names, as the injunction appealed from purports to do. The "Stipulated Terms" in the SJPI not only are not a part of the "Permanent Injunction," but they also contain no obligation not to use or do business under any particular names.
 
 
 35
 Second, the July 21, 1994, findings supporting the injunction (quoted below), are clearly erroneous in stating that the SJPI "reflected the terms of the settlement agreement read into the record ... on June 29, 1993." As respondent concedes in his brief to this court, "A material term of settlement that had been agreed and read into the record was inadvertently left out of the [June 29, 1993] order." The record shows, moreover, that the parties had not fully agreed on settlement terms. At the June 29, 1993 hearing, defendants' counsel advised the court that his recital of terms "doesn't mean we can't go beyond the scope of the word for advertising purposes." The meaning of this enigmatic statement was never clarified. When it had become clear to counsel for both parties, however, that the SJPI did not accurately reflect the settlement agreement, defendants advised the court on July 2, 1993, that they were "withdraw[ing] any consent to entry of further Stipulated Judgments," that they were reserving the question of the continuing validity of their service marks, and that the settlement did not provide for any continuing action or jurisdiction by the court except with respect to disparaging references. It was after having been so advised by defendants that the court entered its July 21, 1993 order striking the SJPI as "erroneously entered." At the hearing held on September 14, 1993, after the SJPI had been stricken, counsel for defendants again advised the court "that the parties can not agree to the interpretation of the agreement that we put together." It was only then that the district court reinstated the SJPI. This record precludes a finding that an enforceable settlement agreement was made.
 
 
 36
 Finally, even if it were assumed that the parties had reached full agreement on the terms of their settlement and that those terms are reflected in the recitals at the June 29, 1993 hearing, those terms could not be enforced without violating Fed.R.Civ.P. 65(d) which requires that "[e]very order granting an injunction ... shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." (Emphasis added.)Because the district court lacked jurisdiction to enter it, the injunction is vacated along with the accompanying orders to disconnect and terminate the use of telephone numbers, imposing sanctions, and assessing attorneys' fees. We remand the action, leaving it to the district judge to decide whether he should recuse and have the action reassigned. Costs to appellants.
 
 
 37
 VACATE and REMAND.
 
 
 
 *
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation